K. E. NORTON *v.* ROY M. HAGGETT ET ALS.

(85 A2d 571)

November Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed January 2, 1952.

*Stanley L. Chamberlin* and *Finn & Monti* for the plaintiff.

*Wilson & Keyser* and *Elton E. Stevens* for defendants Haggett.

*Norbert J. Towne* for defendant Northfield Savings Bank.

BLACKMER, J.  The plaintiff, K. E. Norton, seeks equitable relief because he paid and discharged a note and the mortgage securing it.  The bill alleges that the payment was made under a mutual mis-

take, and that the defendants, Roy M. and Hazel C. Haggett and the Northfield Savings Bank are guilty of fraud and conspiracy. The case was heard by the chancellor, facts found, and a decree entered dismissing the bill; it is here on the plaintiff's exceptions.

So far as it is necessary to state them, the chancellor found these facts. The bank held a note and mortgage given to it by the Haggetts. On November 30, 1948, the plaintiff went to the bank for the purpose of securing possession of this note and mortgage. He told the clerk on duty that he wanted to "take up" the Haggett note and mortgage. Whereupon the clerk asked the plaintiff if he wanted to pay off the note, and the plaintiff replied "yes." The amount due was computed, and the plaintiff gave the bank his check for that amount. The clerk made the proper entries to cover the transaction; he stamped the note "Paid" with a large stamp with red ink, and prepared a discharge for the signature of the bank's president. As the president executed the discharge he said to the plaintiff "You junk men must be making plenty of money in order to be paying someone else's mortgage"; the plaintiff made no reply. The cancelled note and discharged mortgage were handed to the plaintiff, the clerk telling him to be sure to have the mortgage discharge recorded. The plaintiff made no examination of either the note or the mortgage when he received them from the clerk. The plaintiff was well acquainted with notes and mortgages; he understood the process of executing and discharging mortgages, and the meaning of a stamp "paid" on a note. Both the clerk and the president understood that the plaintiff desired to pay the debt. On the same day the plaintiff wrote Roy M. Haggett that he had purchased the note and mortgage. This was the first dealing about the note and mortgage between the plaintiff and the Haggetts. Roy M. Haggett was much disturbed, because the plaintiff had had recent arguments with him on two occasions, and was apparently desirous of harming him. On December 1, Roy M. Haggett communicated with the bank, which told him the note had been paid, not sold. The bank furnished the Haggetts a second discharge of the mortgage, which discharge was recorded. The plaintiff interfered in the business relation between the bank and the Haggetts without any occasion, reason or inducement on the part of the Haggetts. As between the plaintiff and the Haggetts there has never been any indebtedness based on the note and mortgage; the debt due and evidenced by the note and mortgage has been paid and discharged.

On these findings we are dealing with a unilateral mistake, not a mutual mistake as claimed in the bill. It is quite safe to infer from the findings that the plaintiff intended to purchase the note and mortgage, and not to pay the note and discharge the mortgage. But the bank did not share in the plaintiff's mistake. It understood and acted in accordance with the plaintiff's expressed wish, which was to pay. The bank cannot be charged with a mistake simply because it did not know that the plaintiff entertained an unexpressed intent which was the opposite of his mistakenly expressed desire.

██ Insofar as the plaintiff's mistake is involved, the bank can be removed immediately from the picture. A person who confers a benefit upon another, manifesting that he does so as an offer of a bargain which the other accepts, is not entitled to restitution because of a mistake which the other does not share and the existence of which the other does not suspect. Restatement, Restitution, § 12. The equitable principle by which a person is entitled to restitution for what he has transferred to another by mistake is modified by the principle that a person is entitled to the benefit of a bargain made by him without fraud or duress. Ordinarily, therefore, a person entering into a transaction in which another gives or promises consideration is not entitled to the return of what he gives merely because he is mistaken as to the nature of what he gives or receives, or as to other facts which cause him to enter into the transaction. A contracting party who is unaware of and does not share the mistake made by the transferor is entitled to retain that which he has received if what he gives is sufficient consideration for a simple contract * * * * * Idem, Comment pp. 47, 48.

██ The situation as to the Haggetts stands differently. They were not a party to the bargain; they have not changed their position; they parted with no consideration; they will gain an unearned benefit if the plaintiff is refused relief. However, whether a mistake is to be corrected depends always upon the circumstances of the case. *Ward* v. *Lyman,* 108 Vt 464, 472, 188 A 892. On the other side of it there is a compelling combination of circumstances. (1) The plaintiff has no one and nothing to blame except his own negligence and inattention. See *Sparrow* v. *Cimonetti,* 115 Vt 292, 301, 58 A2d 875; *Ward* v. *Lyman, supra,* 471-472; *New York Life Ins. Co.* v. *Kimball,* 93 Vt 147, 153-154, 106 A 676. (2) He was an intermeddler, and officiousness is not to be encouraged. (3) His good faith was apparently questionable. (4) He had no motive of

self-interest; he was not protecting any interest which he had or thought he had; nor was he discharging any duty which he owed or thought he owed. (5) He was not related to, nor even friendly with the Haggetts, nor was he protecting any interest of theirs. (6) To give the plaintiff restitution from the Haggetts would be to substitute him for the bank as creditor of the Haggetts without the consent of either the bank or the Haggetts. No protection is deserved by one who intermeddles by paying another's debt either without reason or to secure rights against the debtor without the consent of the creditor. Restatement, Restitution, Comment on § 43, p. 173. These latter considerations weigh more than the former, and dictate that the loss remain where it has fallen.

The plaintiff briefed four exceptions to the findings. The first, second and fourth exceptions so briefed have been answered by what has been said. The third exception is to the finding that the plaintiff interfered in the business relationship between the bank and the Haggetts as a total stranger thereto, without any occasion, reason or inducement on the part of the Haggetts. One ground is that the finding is immaterial and irrelevant, but we have already seen that this is not so. The other ground is that there is no evidence to support it. There is evidence that shortly after the arguments found as facts the plaintiff examined the town records for the sole purpose "of seeing whether possibly Mr. Haggett was owing some money to somebody"; the bank had no reason to sell the note and mortgage, and would not have sold it to the plaintiff; the Haggetts had no desire for the plaintiff to own the note and mortgage; the plaintiff had no conversation with the bank or the Haggetts thereabout prior to his attempted purchase; the plaintiff's brief concedes that he is a stranger to the instruments. The finding is supported by the evidence.

█ The plaintiff briefs seven exceptions to failures of the chancellor to find as requested matters on the subjects of mutual mistake and the intent of the parties. These have been mostly disposed of by our inference that the plaintiff intended to purchase and our remarks on unilateral mistake. Subordinate infirmities in the requests are now commented on briefly. The numbers used correspond with the plaintiff's brief. Numbers 1 and 2 do not show a mutual mistake. Numbers 3 and 4 are not compelled by the evidence. Number 8 would be a reporting of evidence, which is not required. *Taylor* v.

*Henderson,* 112 Vt 107, 116, 22 A2d 318. Number 10 is immaterial, and Number 14 is contrary to other facts found.

. The plaintiff also briefs eight exceptions to the refusal of the chancellor to find as requested on the subjects of fraud and conspiracy. These are numbered five through twelve in his brief. The facts sought to be found may be summarized thus. After the bank learned that the plaintiff claimed to have bought the note and mortgage, its president immediately and personally presented the plaintiff's check for payment at the drawee bank. The plaintiff seasonably on advice of his lawyer returned to the bank and informed the president that he had bought the mortgage, and that the clerk had made a mistake. He offered to rescind the transaction, but the bank refused, the president informing the plaintiff that "in my opinion he had already made Mr. Haggett a Christmas present." The second discharge was immediately recorded. All the above, read with the facts found, fail to show fraud and conspiracy. The acts requested to be found as facts were within both the legal and equitable competence of the defendants, as has been demonstrated.

A requested finding, plaintiff's brief Number 13 that .the Haggetts have never paid to any one the amount due on the note November 30, 1948, is immaterial. Others, Numbers 15 and 16 request a reporting of evidence.

Claim is made that the decree is not supported by the findings. The briefing presents only matters which have already been considered and determined adversely to the plaintiff's contentions.

No error has been made to appear.

*Decree affirmed.*