**BANK OF NOVA SCOTIA, Plaintiff**

**v.**

**HAROLD BLOCH, et al., Defendants**

Civil No. 1980/229

District Court of the Virgin Islands

Div. of St. Croix

February 19, 1982

ROBERT H. RUSKIN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

THOMAS ALKON, ESQ., St. Croix, V.I., *for defendant Ethyle Bloch*

MELVIN H. EVANS, JR., ESQ., Christiansted, St. Croix, V.I., *for defendants Harold Bloch, Bernard Bloch, Joan Bloch and Rosalyn Bloch*

BERNARD BLOCH, Bloomfield Hills, Michigan, U.S.A., *pro se*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

This case is the latest (and hopefully the last) chapter of the saga involving Bernard Bloch, Joan Bloch and Rosalyn Bloch, pitted against Ethyle Bloch, their former sister-in-law. Ethyle Bloch was married to Dr. Harold N. Bloch until entry of a decree of divorce by a judge of this Court in Bloch v. Bloch, 9 V.I. 554 (D.V.I. 1972), aff'd, 473 F.2d 1067 (3rd Cir. 1973).

Three judges of this Court, i.e., the Chief Judge, a U.S. District Judge from the Eastern district of Pennsylvania sitting specially in St. Croix, and a Territorial Court judge sitting by designation as a District Court judge, have previously contributed their jurisprudential efforts to one or more phases of the litigation between members of the Bloch family and Ethyle Bloch. Aspects of the earlier litigation have found their way on at least four occasions to the U.S. Court of Appeals for the Third Circuit, and to the U.S. Supreme Court by two unsuccessful petitions for writs of certiorari. It is fair to say that Ethyle Bloch prevailed in each and every instance.

The case at hand began when the Bank of Nova Scotia ("BNS") filed a debt and foreclosure action against all of the Blochs in 1976, arising out of a note for $60,000.00 dated January 31, 1967. This note was executed by Harold N. Bloch and was secured by a first mortgage on Plot No. 22 of Est. Golden Rock and a portion of Parcel No. 3 of Est. Orange Grove, St. Croix. The property was solely owned by Harold Bloch. Counterclaims and cross-claims were

asserted in that action which are now the subject of this opinion. The primary debt and foreclosure action was dismissed by consent of all parties on February 10, 1982, after BNS assigned its interest in the mortgage. Still to be decided, however, is the counterclaim by Bernard Bloch, Joan Bloch and Rosalyn Bloch ("the Blochs") against BNS, and a cross-claim by the Blochs against the co-defendant Ethyle Bloch.

The Blochs are seeking the imposition of an equitable lien on the property by virtue of the alleged payment of $38,010.00 by the Blochs between May 1972 and December 17, 1973. There is no dispute that $25,010.00 of this amount went to purchase the property at the foreclosure sale held on May 30, 1972, to pay off a second mortgage in favor of Virgin Islands National Bank (now First Pennsylvania Bank, N.A.). The remaining $13,000.00 was paid on the first mortgage held by BNS at various times between May 1972 and December 17, 1973, the date of the final payment. After that payment, the BNS mortgage fell into default and the debt and foreclosure action which triggered these counter and cross-claims followed.

In early February 1982, each of the parties moved or cross moved, as the case may be, for summary judgment per Rule 56 Fed. R. Civ. P. as to the merits of the counter and cross-claims. Harold N. Bloch is not a party to these counter and cross-claims, and accordingly, the dismissal of the primary claim by BNS effectively removes him from the case. On February 10, 1982, oral argument on the aforesaid motions was held, after the parties waived the ten day minimum notice provision of Rule 56 Fed. R. Civ. P. All parties were given an additional five days to submit further evidentiary data in support of their respective positions.

## I. RELEVANT PRIOR LITIGATION

Two of the earlier cases involving the Blochs are relevant to the determination of the cross motions for summary judgment herein. They will be taken in turn.

### 1. *The Award of the Property as Alimony*

The District Court, in the decree of divorce itself, dated February 4, 1972, directed that Ethyle Bloch be permitted to remain in possession of the premises described in the action herein. This decree was modified on June 2, 1972, to provide further that Harold N. Bloch be required "to pay the first mortgage payments including arrears to the Bank of Nova Scotia so long as Plaintiff (Ethyle Bloch) remains in possession." Bloch v. Bloch, supra. Subsequently,

48

the property was actually awarded as alimony to Ethyle Bloch, Bloch v. Bloch, supra, order dated June 6, 1975, aff'd, 11 V.I. 741 (3rd Cir. 1975), reh. den., January 26, 1976.

When Harold N. Bloch refused to convey the property, the District Court ordered it conveyed by the Clerk of the Court. Bloch v. Bloch, supra, order dated June 30, 1977, aff'd, 557 F.2d 724 (3rd Cir.), cert. den., 439 U.S. 984 (1978). A District Court rehearing was denied (January 30, 1980), aff'd, 639 F.2d 771 (3rd Cir. 1980), cert. den., 452 U.S. 916 (No. 80-1698, 1981).

Finally, on February 6, 1979, the Clerk of District Court, on behalf of Harold N. Bloch who persisted in his refusal to comply with the Court's order, conveyed the property to Ethyle Bloch. At the time of conveyance, it was subject to the BNS mortgage given by Harold N. Bloch. Ethyle Bloch had no obligation to make payments under that note or mortgage. What is clear from these facts, and will become even clearer from discussion of the next phase of litigation, is that Harold N. Bloch was the sole owner of the property during the crucial period 1967 to 1973.

2. *The Bloch Family Joins the Battle*

While Harold N. Bloch was battling frontally against Ethyle Bloch in the dispute over the property discussed above, his kin by blood and marriage attempted a flanking attack in Bernard Bloch, et al. v. Ethyle Bloch, 10 V.I. 344 (D.V.I. 1973). The Hon. Clifford Scott Green, Judge of the District Court for the Eastern District of Pennsylvania, was assigned temporarily to St. Croix for the purpose of hearing this phase of the on-going litigation. Before Judge Green in that encounter were the very same Blochs engaged in the current cross-claim against Ethyle Bloch, the very same property and the very same $25,010.00.

Judge Green's findings pertinent to the case at issue were:

(1) Commencing in May 1972, Bernard Bloch, Joan Bloch and Rosalyn Bloch were co-conspirators with Harold N. Bloch in an attempt to destroy any rights of Ethyle Bloch in the property, including her right to remain in possession.

(2) Bernard Bloch collusively entered into a plan with Harold N. Bloch whereby Bernard Bloch, under Harold N. Bloch's control, would purchase the property for $25,010.00 as a straw man and agent, and take title to it in his (Bernard's) name, together with the other members of the Bloch family.

(3) Neither Joan Bloch nor Rosalyn Bloch, cross-complainants in the case herein, contributed any part of the $25,010.00 which was

49

used to pay off the Virgin Islands National Bank mortgage, one of the acts in furtherance of the conspiracy.

(4) Harold Bloch was the owner of the property and Bernard, Joan and Rosalyn Bloch had no ownership interest in the property, but conspired with Harold N. Bloch to help him evade a lawful order of the Court. Bernard Bloch, et al. v. Ethyle Bloch, supra, 10 V.I. at 349–50.

Judge Green also concluded as a matter of law that the Blochs were agents of Harold N. Bloch in their actions from May 30, 1972 and subsequent thereto, with respect to this property. Bernard Bloch, et al. v. Ethyle Bloch, supra, 10 V.I. at 353. The effect of these Findings of Fact and Conclusions of Law as applicable to the instant case before us will be attended to in more detail, but certain procedural matters raised by the parties should first be outlined and discussed.

## II. CASE AT ISSUE—PROCEDURAL MATTERS

### 1. *Summary Judgment—Material Facts Not in Dispute*

Since all parties filed motions for summary judgment, they uniformly represent that the evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. And from the record, it is clear that those facts relevant to a decision are not in dispute. Accordingly, the matter is ripe for summary judgment, and the Court's Findings of Fact and Conclusions of Law will follow shortly.

### 2. *Necessary Assertion of Affirmative Defenses*

The Blochs asserted in their moving papers that Ethyle Bloch had failed to file an answer to their cross-claim and that a default judgment should thereby be entered in their favor. This overlooks the earlier third-party complaint filed by the Blochs against Ethyle Bloch in this action, before she was joined as a defendant. That complaint is not as extensive as the later cross-claim, but it clearly raises the same issues recited in the cross-claim. Ethyle Bloch did file an answer to the third-party complaint, and in that answer she affirmatively asserted that the claim of the Blochs was blocked by the doctrine of res judicata. The Court is satisfied that Ethyle Bloch met the requirements of Rule 8(c) Fed. R. Civ. P. in affirmatively bringing that issue before the Court and it will be so considered in this opinion.

50

## III. APPLICABILITY OF DOCTRINE OF RES JUDICATA TO CASE AT ISSUE

■■ Briefly stated, the doctrine of res judicata is the legal principle that a final judgment, rendered upon the merits, without fraud or collusion, by a court which had jurisdiction over both the parties and the subject matter, is conclusive in a subsequent action between the parties or their privies based upon the same cause of action. Accordingly, the first judgment is conclusive as to those issues actually raised and litigated. Restatement of Judgments § 1.[1] That doctrine has been applied by this Court previously. See Moore v. Moore, et al., 1976 St. Croix Supp. Vol. II, 616, 625 (D.V.I. 1976) and Lindquist v. Quinones, et al., 1978 St. Croix Supp. Vol. II 334, 337 (D.V.I. 1978). Such judgment is conclusive not only as to those issues actually raised and litigated, but also as to those which might have been raised and litigated. Heiser v. Woodruff, 327 U.S. 726, 735 (1945), citing Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371 (1940); Grubb v. Public Utilities Commission of Ohio, 281 U.S. 470 (1929) and Cromwell v. County of Sac, 94 U.S. 351 (1877).

[3] The purpose of the doctrine of res judicata is obvious. It is to bring an end to litigation after a full and complete airing of merits, to prevent subjecting parties to endless relitigation of issues already decided and to expedite the flow of cases on court calendars in the interests of justice. As applicable to the case at bar, there can be no doubt that:

(1) Bernard Bloch, Joan Bloch and Rosalyn Bloch were plaintiffs and

(2) Ethyle Bloch was the defendant in

(3) A previous District Court action, Civ. No. 73/141, which involved

(4) The same property as herein and

(5) The same expenditure of $25,010.00 as herein and

(6) The same question of the rights of the Blochs, if any, accruing from that expenditure.

Similarly, there can be no doubt that the District Court finally and conclusively determined those rights in that forum after the parties were given full opportunity to press their respective posi-

---

[1] The doctrine of res judicata defined in Restatement of Judgments § 1 is applicable in this jurisdiction under the statutory provision that rules of the common law as expressed in the restatements of the law shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply. 1 V.I.C. § 4 (1967).

tions. Bernard Bloch, et al. v. Ethyle Bloch, supra. That Court found that the expenditure of $25,010.00 created *no rights* in favor of the Blochs, but rather that the Blochs acted strictly as "straw men" or "agents" of Harold N. Bloch. (Finding of Fact No. 23, Bernard Bloch, et al. v. Ethyle Bloch, 10 V.I. at 350.)

All this demonstrates that the present claim of the Bloch family that an equitable lien was created by the $25,010.00 expenditure, was conclusively determined by the previous District Court decision. This decision, which was not appealed and therefore final, held that the payment of the $25,010.00 was made pursuant to the Blochs' scheme whereby they acted as mere fronts for Harold N. Bloch. Therefore, no lien was thus created as to that payment, and the claim is res judicata. The only possible exception to application of that doctrine does not apply in this case, i.e., a claim of fraud and collusion on Ethyle Bloch's part which vitiates the earlier finding. Restatement of Judgments § 121. The only collusion found by the Court earlier was by the Blochs against Ethyle Bloch, and not the reverse.

█ The claim of an equitable lien asserted by the Blochs with respect to the $25,010.00 will be denied under the doctrine of res judicata.

## IV. FINDINGS OF FACT

The remaining portion of the Blochs' claim is that they paid $13,000.00 to BNS beginning May 1972, with the final payment on December 17, 1973. The Blochs allege that this created an equitable lien in their favor. Since the $13,000.00 was not at issue in the previous case, the Court will not treat it as res judicata although several of the earlier findings are relevant to the instant claim, as was indicated above.

The Blochs' further assertions of collusion between BNS and Ethyle Bloch, after January 1974, provide a basis for relief only if the Blochs actually possess the equitable lien claimed. From the evidence, the Court makes the following findings of fact:

(1) Harold N. Bloch was the sole owner of the property in question at all times pertinent hereto until February 6, 1979.

(2) Harold N. Bloch was the sole maker of the mortgage note, and the only mortgagor on the underlying security instrument which mortgaged the property to BNS on January 31, 1967.

(3) Ethyle Bloch had no legal obligation to make any payments on the note and mortgage since she was not a signator on the original

documents, the deed in her favor did not provide for her assumption of that debt and there is no other document in evidence indicating her assumption of that debt.

(4) Harold N. Bloch was legally obligated, not only as signator of the note and mortgage, but under order of District Court, to make payments regularly on that obligation.

(5) The sum of $13,000.00 was paid to BNS by the Bloch family from May 1972 until a final payment on December 17, 1973.

(6) The memorandum opinion and final order of Hon. Clifford Scott Green was entered December 27, 1973.

(7) No payments were made by the Bloch family on the BNS note and mortgage after the decision by the Hon. Clifford Scott Green, and the debt fell into default.

(8) The payments described herein to BNS were made in the period during which the Bloch family was acting as agents for and conspirators with Harold N. Bloch, as found by the Hon. Clifford Scott Green in Bernard Bloch, et al. v. Ethyle Bloch, supra, and were made pursuant to that agency relationship.

(9) The payments were made at a time the Blochs thought their conspiracy would be successful, and ceased immediately after the decision by Hon. Clifford Scott Green stripped them of such illusions.

(10) Ethyle Bloch did not encourage, request, arrange, seek or contract for any such payments.

(11) With respect to Ethyle Bloch, the Blochs acted as volunteers, and officiously, when they made the $13,000 payments. The payments were made on an obligation owed by Harold N. Bloch and were made during the period when the Blochs were his agents.

(12) The Blochs were not acting under any mistaken belief that they were responsible for the obligation, or had an interest to protect, but rather in furtherance of their arrangement with Harold N. Bloch.

(13) Although the lien was alleged to have been created between May 1972 and December 17, 1973, the Blochs delayed until December 10, 1976, to file an equitable action to establish the lien.

(14) At all such times, Harold N. Bloch was the owner of the property, and so remained until February 6, 1979, tenaciously holding title until it was transferred by Court-ordered conveyance on that date.

(15) No lien has ever been asserted against Harold N. Bloch by the Blochs. The Blochs, including Harold N. Bloch, acted in concert

in the instant action, even to the extent of retaining the same counsel.

(16) The only conclusion to be drawn from the $13,000.00 payment is the logically indisputable inference that it was made in furtherance of the same conspiracy and agency as the other payments, since the Blochs would not, on the one hand, attempt to defeat Ethyle Bloch's interest with a $25,010.00 payment, and on the other hand seek to protect her interests with the $13,000.00 payment.

## V. DISCUSSION

### 1. *The Claim of an Equitable Lien*

██ Equity provides the basis for assertion of an equitable lien under certain circumstances. In cases where a person is entitled to restitution of funds advanced, he may be entitled to "a decree by a court of equity that a lien upon the subject matter . . . be established." Restatement of Restitution § 4(d) (1937). The basis for such a lien is founded in the equitable doctrine of "unjust enrichment". Restatement of Restitution § 161. Such a lien can be enforced where a person makes improvements upon property of another, such as the payment of money on a mortgage which reduces the debt, thereby increasing the net value of property, if it was done by "mistake". Restatement of Restitution §§ 170, 171.

Applying those essential elements of an equitable lien to the case at issue, there can be no doubt that the payment of $13,000.00 enriched Ethyle Bloch, although she had only the right of possession at the time of payment and did not have actual ownership until 1979. This enrichment took the form of reducing an obligation on property. In the event this obligation fell into default, she might well have lost the property which she has had to defend for more than ten years against the assaults of various members of the Bloch family.

To succeed, however, the Blochs must establish more than the enrichment of Ethyle Bloch. They must show that they were not officious interlopers with respect to the $13,000.00 payment and, assuming that Ethyle Bloch had not sought their assistance, that their mistake was of such a character that they should have an equitable lien to prevent Ethyle Bloch's *unjust* enrichment.

### 2. *The Blochs as Officious Interlopers*

█ The parties all agree that Ethyle Bloch did not ask, contract, or arrange, for the Blochs to make the payments to BNS on her behalf. Section Two of the Restatement of Restitution provides that

54

"[a] person who officiously confers a benefit upon another is not entitled to restitution therefor." Except in certain circumstances, a person who confers a benefit on another, such as by increasing the net value of property, should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a valid reason for so doing.

> A person is not required to deal with another unless he so desires and ordinarily, a person should not be required to become an obligor unless he so desires. Restatement of Restitution § 2, Comment a (1937).

Under the rule set forth in Section 2, restitution is denied to officious persons and they are thereby penalized, while at the same time persons who have had benefits thrust upon them are protected. Clearly, this is the situation as to the Blochs and Ethyle Bloch. The Blochs made the $13,000.00 payments officiously, without any action by Ethyle Bloch to encourage or seek them.

During the time the payments were made, Ethyle Bloch had only the right of possession of the property. Beneficial ownership and the obligation to pay rested in Harold N. Bloch, as Judge Green made clear in Bernard Bloch, et al. v. Ethyle Bloch, supra, when he found that at all times, the actions of the other Blochs were taken to protect Harold N. Bloch's ownership interest, and to foil Ethyle Bloch's interest in possession.

No clearer case for describing parties as "officious interlopers" could be made than in the case under discussion. See comparable situations in Norfolk & Dedham Fire Insurance Co. v. Aetna Casualty & Surety Co., 318 A.2d 659, 661–62 (Vt. 1974); Stein v. Simpson, 230 P.2d 816, 820–21 (Cal. 1951); and Norton v. Haggett, 85 A.2d 571, 573–74 (Vt. 1952). The Blochs were volunteers on behalf of Harold N. Bloch and acted as his agent, and had no interest of their own to protect in the property, a point emphasized by Judge Green.

### 3. *Was the $13,000.00 in Payments All a Mistake?*

Equity offers still another ground for creation of an equitable lien. A person who discharges the duty of another or who releases another's property from an adverse interest, in the mistaken belief that he is discharging a duty of his own, is entitled to restitution and, where applicable, an equitable lien against the property. Restatement of Restitution § 43(a) (1937). That is precisely the argument made by the Blochs. They contend that they mistakenly thought they owned the property, having purchased it on May 30, 1972, at the

foreclosure sale of the Virgin Islands National Bank second mortgage, and therefore made the BNS payments to protect the property against foreclosure. They claim that this mistaken belief in ownership should provide the basis for relief because these payments conferred a benefit upon Ethyle Bloch.

Whether a mistake should be corrected by restitution always depends on the facts of the particular case. And what is unmistakably apparent from the evidence is that the Blochs made those payments in furtherance of their scheme to protect Harold N. Bloch. They were as much "straw men" and "agents" of Harold N. Bloch in those payments as they were in the earlier $25,010.00 payment. The BNS payments were consistent with the Blochs' scheme to take the property in their own name, with the Blochs recognizing Harold N. Bloch's beneficial ownership therein all the while.

The Blochs planned, and tried, to deprive Ethyle Bloch of her possessory rights, until thwarted by Judge Green's decision. The payments ceased immediately upon receipt of Judge Green's decision which was adverse to them. They never had an interest in the property, but acted only as an accommodation to Harold N. Bloch.

Moreover, the Blochs have never looked to Harold N. Bloch for any relief. What further proof is needed that they were interested solely in ousting Ethyle Bloch from possession and wresting future ownership of the property from her. As spelled out so clearly in Norton v. Haggett, 85 A.2d 571, 573–74 (Vt. 1952):

> (1) The plaintiff has no one and nothing to blame except his own negligence and inattention. (2) He was an intermeddler, and officiousness is not to be encouraged. (3) His good faith was apparently questionable. (4) He had no motive of self interest; he was not protecting any interest which he had or thought he had; nor was he discharging any duty which he owed or thought he owed. (5) He was not related to, nor even friendly with the Haggetts, nor was he protecting any interests of theirs.[2]

The Blochs were not discharging any duty they had or thought they had. They were discharging a duty of Harold N. Bloch, at his direction, a duty which he had under both contract and court order. Even at that, they were not discharging that duty for any reason other than to further the conspiracy to return the property to Harold N. Bloch without Ethyle Bloch ensconsed in it. Ethyle Bloch

---

[2] The Court notes that while the Blochs were, in fact, related to Ethyle Bloch by marriage, there certainly was no love lost between the two factions.

is not "unjustly enriched" in these circumstances because the benefit conferred was a result of the wrongful conduct of the Blochs. Stein v. Simpson, 230 P.2d 816, 821 (Cal. 1951).

The Blochs will not be granted an equitable lien because they are not entitled to it, on the law or the facts.

## VI. CONCLUSIONS OF LAW

(1) The Court has jurisdiction of the parties and the subject matter.

(2) The claim of Bernard Bloch, Joan Bloch and Rosalyn Bloch for an equitable lien on the property by reason of the $25,010.00 payment on May 30, 1972 is res judicata and therefore will be denied.

(3) The claim of Bernard Bloch, Joan Bloch and Rosalyn Bloch for an equitable lien on the property by reason of the $13,000.00 payments to BNS will be denied, since the Blochs were officious interlopers who made such payments solely as "straw men" and "agents" for Harold N. Bloch, having no interest in the property of their own to protect, and having made such payments without request from Ethyle Bloch.

(4) The claim of Bernard Bloch, Joan Bloch and Rosalyn Bloch of fraud and collusion on the part of BNS and Ethyle Bloch will be denied since they have no standing to assert such claim, having demonstrated no interest in the property of their own to protect.

## VII. ATTORNEYS' FEES

### 1. *As indemnification to Ethyle Bloch*

Pursuant to 5 V.I.C. § 541, Ethyle Bloch will be awarded costs, including indemnification for attorneys' fees, against Bernard Bloch, Joan Bloch and Rosalyn Bloch. No more compelling case for award can be made than the one at hand, where from 1976 to this date Ethyle Bloch's interest in the property, at first possessory only, then by valid title, has been tainted by the claims now being dismissed. Her attorney will have ten days from entry of the judgment of dismissal to file his affidavit for consideration.

### 2. *As Indemnification to Bank of Nova Scotia*

The Court will exercise its discretion to make no award of costs, including attorneys' fees, to BNS. This action was filed by BNS on October 22, 1976, and plaintiff BNS named Bernard Bloch, Joan Bloch and Rosalyn Bloch as defendants among others. Yet, nearly three years earlier, the District Court had found that these three persons had no property interest of any kind in the property sought

to be foreclosed. Naming the Blochs as defendants in the face of that final judgment may well have been prompted by an excess of caution on the part of BNS, but it cannot be denied that it triggered further claims by the Blochs against Ethyle Bloch.

## CONCLUSION

In a written submission to the Court, treated as evidentiary in the summary judgment consideration, Bernard Bloch wrote fervently of the need to protect Ethyle Bloch and her son, and to see that justice was done without violence to the rights of all parties. How right he was, albeit never recognizing that the protection Ethyle Bloch required was from Bernard Bloch, Joan Bloch and Rosalyn Bloch. Hopefully, this decision provides it.

And, hopefully, this will be the last chapter of the Bloch family saga . . . the final curtain in an eleven-year tragicomedy.

## JUDGMENT

THIS MATTER is before the Court on cross motions by the plaintiff Bank of Nova Scotia, defendant Ethyle Bloch, and defendants Bernard Bloch, Joan Bloch and Rosalyn Bloch, for summary judgment as to the cross-claims and counterclaim herein. The Court having filed its memorandum opinion with findings of fact and conclusions of law, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

THAT, the counterclaim of the defendants Bernard Bloch, Joan Bloch and Rosalyn Bloch against the plaintiff, Bank of Nova Scotia, be and the same is DISMISSED, with prejudice, each party to bear his, her or its own costs, and further

THAT, the cross-claim of the defendants Bernard Bloch, Joan Bloch and Rosalyn Bloch against the defendant Ethyle Bloch be and the same is DISMISSED, with prejudice, and further

THAT an affidavit for costs and fees as indemnification for defendant Ethyle Bloch be submitted within ten (10) days of entry of this Order, or, failing which, no award will be made.