For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the petition for writ of mandamus is **GRANTED** and the Territorial Court is directed to enter an order dismissing *Government of the Virgin Islands v. Richards*, Terr. Ct.Crim. No. F402/1995. It is further

**ORDERED** that Rule 128(b) & (c) of the Territorial Court is **NULL AND VOID**, and that the Order of the Territorial Court of July 15, 1997, adopting an amended Rule 128 adding subparts (b) and (c) is **VACATED**. It is further

**ORDERED** that A.J. Weiss & Associates **SHOW CAUSE** no later than March 5, 1999, why it should not be held in **CONTEMPT** of this Court, or **OTHERWISE SANCTIONED,** for its failure to appear for oral argument on March 19, 1998.

## GUARDIAN INSURANCE COMPANY, Plaintiff,

v.

## BAIN HOGG INTERNATIONAL LIMITED and Eagle Star Reinsurance Company Limited, Defendants.

### No. Civ. 1996–0180.

District Court, Virgin Islands, D. St. Thomas and St. John.

June 9, 1999.

Adam G. Christian, Hodge & Francois, St. Thomas, U.S.V.I., for plaintiff.

Henry L. Feuerzeig, Simone R.D. Francis, Dudley, Topper, and Feuerzeig, St. Thomas, U.S.V.I., for defendant Bain Hogg International Ltd.

James L. Hymes, III, Sharmane Davis-Brathwaite, Hymes & Zebedee, St. Thomas, U.S.V.I., for defendant Eagle Star Reinsurance Co. Ltd.

### Memorandum Opinion

FINCH, District Judge.

This motion comes before the Court on a summary judgment motion brought by Defendant Bain Hogg International Ltd. ("HIB")[1] pursuant to Fed.R.Civ.P. 56. HIB's motion seeks to bar Guardian Insurance Company's ("Guardian") complaint which alleges breaches of a reinsurance contract. HIB bases its motion upon a judgment issued by a British High Court of Justice on May 12, 1997, which determined, *inter alia*, that HIB did not breach any duties owed to Guardian under the same reinsurance contract at issue in this case. Plaintiff opposes Defendant's motion and has cross-filed for summary judgment. This matter was argued before the Court at a hearing on Thursday, May 6, 1999.

---

1. Defendant asserts, and Plaintiff does not contest, that HIB Limited is the proper name for the party to this action and not Bain Hogg International Limited. For purposes of this opinion, Defendant shall be referred to as HIB.

## Facts

Guardian is a Virgin Islands insurer. HIB is a British reinsurance broker engaged in obtaining reinsurance on behalf of insurers for risks exceeding the financial level manageable by the primary insurers. Eagle Star Reinsurance Company ("Eagle Star") is a reinsurer whose primary place of business is London, U.K.[2] In early 1993, Guardian and HIB entered into an oral agreement by which HIB was to serve as Guardian's reinsurance broker. Pursuant to this agreement, in December 1993, HIB issued to Guardian and its Puerto–Rico based affiliate, Heritage Insurance Co. Ltd. ("Heritage"), a Cover Note. This Cover Note confirmed that HIB had placed reinsurance coverage with Eagle Star under a First Surplus Property Treaty (the "Treaty") covering risks insured by Guardian within the U.S. Virgin Islands, and by Heritage within the British Virgin Islands and the Lesser Antilles.

According to Eagle Star, it issued a provisional notice of cancellation of the reinsurance policy on September 20, 1993, but Guardian disputes ever receiving the notice. HIB forwarded Guardian a Cover Note on December 29, 1993, together with a letter advising Guardian that the Treaty was for the period January 1, 1993 to December 31, 1993. Guardian made no cessions under the Cover Note until 1995, following Hurricane Marilyn. At that time, Guardian attempted to cede risks to Eagle Star by filing with HIB a series of statements and a check for premiums due Eagle Star. HIB accepted the statements and deposited the check. However, HIB subsequently sought to refund the premiums and informed Guardian that the Treaty had been canceled effective December 31, 1993.

HIB then applied for and received from the High Court of Justice in London an order dated August 22, 1996, permitting service of a summons on Guardian, Heritage, Eagle Star Insurance Company and Eagle Star Reinsurance Company. On September 3, 1996, Guardian filed the instant action against both HIB and Eagle Star, alleging breach of contract, breach of fiduciary duty and bad faith. Shortly thereafter, HIB filed a separate action in the Queens Division, Commercial Court of London ("Commercial Court" or "English Court"), seeking declaratory judgment that HIB was not liable to Guardian for a breach of any duty. HIB effected personal service on Guardian in St. Thomas on September 4, 1996. Guardian's London counsel filed a motion challenging the jurisdiction of the Commercial Court to hear HIB's claims against Guardian. After a hearing, the Commercial Court rejected Guardian's challenge to jurisdiction on December 11, 1996. Guardian subsequently sought leave to appeal the Commercial Court's ruling which request was denied. Guardian then filed a Notice of Ex Parte Application for Leave to Appeal and Stay and a Notice of Appeal with the English appellate court on December 20, 1996. This request was denied by order dated January 22, 1997.

After resolving the jurisdictional issues, the Commercial Court conducted a trial on these matters on April 21, 1997. Although Guardian chose not to participate in the trial, the English Court reviewed the evidence before it and granted judgment in favor of HIB holding that it had not breached any duties owed to Guardian and that, in any event, Guardian did not suffer any loss as a result of any alleged breach. Under British law, Guardian had four weeks after the entry of judgment to file an appeal. It did not do so. HIB now argues that Guardian's claims in this Court must be dismissed because the English Court's judgment is enforceable and bars Guardian's suit by *res judicata.* Plaintiff contests Defendant's motion and cross-moves for summary judgment arguing that

---

**2.** For a general explanation of the distinct roles played by insurers and reinsurers in the insurance industry, see *North River Ins. Co. v.* *CIGNA Reins. Co.,* 52 F.3d 1194, 1198–1200 (3d Cir.1995).

the English Court's ruling is not enforceable.

## Discussion

## I. HIB's Motion for Summary Judgment

### A. Standard of Review

In considering a summary judgment motion, the Court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is a genuine issue of material fact, and thus whether the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987) (*en banc*). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is material if it might affect the outcome of the suit under the governing substantiative law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Id.*

### B. Standard for Recognizing a Foreign Court's Ruling

United States courts recognize foreign judgments under the doctrine of comity. *Aetna Life Insurance Co. v. Tremblay,* 223 U.S. 185, 190, 32 S.Ct. 309, 56 L.Ed. 398 (1912). The Third Circuit defines the doctrine of comity as "a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir.1971), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). "Comity should be withheld only when its acceptance would be con-

trary or prejudicial to the interest of the nation called upon to give it effect." *Id.*

▮▮▮▮ Procedurally, the Third Circuit Court of Appeals has determined that the law of the state where recognition is sought should be applied in determining whether recognition should be granted. *de la Mata v. American Life Ins. Co.,* 771 F.Supp. 1375, 1381 (D.Del.1991), *aff'd by* 961 F.2d 208 (3d Cir.1992). Plaintiff argues that local law, embodied in the Virgin Islands Uniform Recognition of Foreign Money–Judgments Act (the "Uniform Act"), 5 V.I.C. §§ 561–569 (1992), provides the appropriate standard to use. Defendant argues that no local law is applicable, thereby necessitating the use of the Restatement (Third) of Foreign Relations Law of the United States (the "Restatement").[3]

The Restatement provides that:

a final judgment of a court of a foreign state granting or denying recovery of a sum of money, establishing or confirming the status of a person, or determining interests in property, is conclusive between the parties and is entitled to recognition in courts in the United States.

Rest. 3rd, Restatement of the Foreign Relations Law of the United States § 481(1). This rule of law is applicable to a wide range of judgments. *See id.,* n. 2; *Leo Feist, Inc. v. Debmar Publishing Co.,* 232 F.Supp. 623 (E.D.Pa.1964) (concerning an alleged breach of copyright); *Clarkson Co. Ltd. v. Shaheen,* 544 F.2d 624 (2d Cir.1976) (concerning the rights of a foreign trustee in bankruptcy to records in the United States); *Pioneer–Cafeteria Feeds, Ltd. v. Mack,* 340 F.2d 719 (6th Cir.1965) (concerning claims recognized or denied by foreign bankruptcy court). The Uniform Act, on the other hand, is more narrow in scope. It states in relevant part: "[e]xcept as provided in section 565, a foreign

---

**3.** In the absence of local laws to the contrary, the restatements of law approved by the American Law Institute provide the rules of decision in Virgin Island Courts. 1 V.I.C. § 4.

judgment meeting the requirements of section 563 is conclusive between the parties to the extent that it grants or denies *recovery of a sum of money.*" 5 V.I.C. § 563 (emphasis added). Thus, whether the Restatement or the Uniform Act applies depends upon the type of foreign judgment sought to be enforced.

In the instant suit, the English Court determined that HIB did not breach its duties to Guardian and that any failure on HIB's part to notify Guardian about the notice of termination in a timely manner did not cause Guardian any harm. (*See* Def.'s Mem. in Supp., Ex. F). Defendant asserts that this judgment is not monetary in nature thereby indicating that the Restatement's standard should be applied in determining the enforceability of the English Court's ruling. In a separate proceeding in England, however, an English court also awarded HIB attorneys' fees and costs in the amount of £ 206,897 which HIB seeks in a counterclaim against Guardian pursuant to FedR.Civ.P. 13(a). To enforce this monetary judgment by a foreign court, HIB admits that it must satisfy the Uniform Act's provisions. (*See* Def.'s Reply Mem. at 4). In the Court's view, even though HIB is not currently pursuing the monetary claim, the claim is related to the declaratory action. Judicial economy would not be served by forcing the parties to re-litigate identical issues under two separate standards. Therefore, considering that this action is intertwined with a monetary action, the Court finds that the Uniform Act is the controlling standard. Nevertheless, due to the similarities between the Restatement and Uniform Act's provisions, both will be outlined below and then will be analyzed simultaneously using the relevant facts.

### 1) The Restatement's Standard

According to the Restatement, a foreign court's judgment is enforceable unless there are grounds for nonrecognition of such judgment. (*See* Rest. 3rd, Restatement of the Foreign Relations Law of the

United States § 481(1)). Specifically, the Restatement provides that:

1) A court in the United states may not recognize a judgment of the court of a foreign state if:

 a) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law; or

 b) the court that rendered the judgment did not have jurisdiction over the defendant in accordance with the law of the rendering state and with the rules set forth in section 421.

2) A court in the United States need not recognize a judgment of the court of a foreign state if:

 a) the court that rendered the judgment did not have jurisdiction of the subject matter of the action;

 b) the defendant did not receive notice of the proceedings in sufficient time to enable him to defend;

 c) the judgment was obtained by fraud;

 d) the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the Unites States or of the State where recognition is sought;

 e) the judgment conflicts with another final judgment that is entitled to recognition; or

 f) the proceeding in the foreign court was contrary to an agreement between the parties to submit the controversy on which the judgment is based to another forum.

Rest. 3rd, Restatement of the Foreign Relations Law of the United States § 482. If one of the defenses listed in subsection (1) is established, the court is required to deny recognition of the foreign court's judgment. If one of the defenses in subsection (2) is established, the court is not

required to deny recognition, but may do so in the interests of justice. *Id.*, comment a.

### 2) The Uniform Act's Standard

According to the Uniform Act, a foreign judgment that grants or denies recovery of a sum of money is enforceable if the American court finds no grounds for non-recognition. 5 V.I.C. § 563. The grounds for non-recognition are identical to the those listed under the Restatement except for two exceptions. (*See* 5 V.I.C. § 565). First, whereas the Restatement gives a court discretion to find a foreign judgment inconclusive if the foreign court did not have jurisdiction over the subject matter, the Uniform Act requires a court to make such a finding. *Id.* at § 565(a)(3). Second, the Uniform Act provides an additional ground for non-recognition at the court's discretion not found in the Restatement: in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of action. *Id.* at § 565(b)(6).

### C. Impartial Tribunal/Due Process of Law

▮ In order to succeed on its summary judgment motion, Defendant bears the burden of proving that the English Court's judgment does not fall within any of the grounds for non-recognition. Under both the Restatement and the Uniform Act, Defendant's first must demonstrate that the English Court was an impartial tribunal that utilized procedures compatible with due process of law. Defendant clears this hurdle by identifying Third Circuit case law conclusively establishing that English courts are impartial and comport with due process. *Somportex*, 453 F.2d at 444. Indeed, Plaintiff does not directly contest the impartiality or lack of due process offered by an English court.[4] Therefore, Defendant has met its burden in this regard.

### D. Personal Jurisdiction

▮ Defendant also must demonstrate that the English Court had personal jurisdiction over Plaintiff. According to the Restatement, "if the judgment debtor appeared in the rendering court for the purpose of challenging its jurisdiction and that jurisdiction is upheld, the party is generally precluded from renewing the challenge in the state where recognition is sought, unless the proceeding in the foreign state was manifestly unfair or the asserted basis for jurisdiction clearly untenable." Rest. 3rd, Restatement of the Foreign Relations Law of the United States § 481, comment i. This rule applies even when the judgment in question is a default judgment as is the case here. *Id.* As previously noted, English legal procedure is not deemed to violate due process rights according to the Third Circuit, so the remaining task for the Court would be to evaluate the asserted basis for jurisdiction. Judge Longmore of the Commercial Court found English jurisdiction based on, *inter alia*, Guardian's employment of an English reinsurance broker and an English Reinsurer. (*See* Def.'s Mem. of Law in Supp., Ex. B, p. 3). He also inferred that Guardian was seeking trial in the Virgin Islands in order to obtain bad faith damages from HIB, an action not allowable under English law. *Id.* These reasons do not appear to be clearly untenable and the English Court's assertion of jurisdiction over Guardian was reasonable.

▮ Even if the Court reviews the personal jurisdiction issue de novo, legal precedent under the Restatement and Uniform Act still favors finding that the English Court had personal jurisdiction over Plaintiff. According to the Restatement, a foreign court has jurisdiction over a party if the relationship of the state to the person or thing involved in litigation is "rea-

---

4. Plaintiff does allege that its inability to bring charges of bad faith against Defendant under English law constituted some sort of due pro-
cess violation, but that is addressed in part II.D.

sonable." Rest. 3rd, Restatement of the Foreign Relations Law of the United States § 421(1). A relationship is "reasonable" if "the [party] regularly carries on business in the state, ... or ... had carried on activity in the state, but only in respect to such activity." *Id.* at § 421(2)(h), (i). As an insurance company that utilized an English broker and that contracted with an English reinsurance carrier, Guardian satisfies these criteria for establishing jurisdiction.[5]

The Uniform Act does not specifically articulate a standard for finding personal jurisdiction. Instead, Plaintiff argues that Defendant must satisfy the "minimum contacts" framework established by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. Plaintiff primarily relies on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), to argue that it lacked sufficient minimum contacts with England to establish personal jurisdiction.[6] In *Burger King*, the Supreme Court noted that the minimum contacts inquiry is a "fair warning" requirement of due process which is satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472, 105 S.Ct. 2174 (citations omitted). The Court went on to state:

> Where the [party] "deliberately" has engaged in significant activity within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the "benefits and protec-

tions" of the forum's law it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76, 105 S.Ct. 2174. (citations omitted).

In the instant suit, it is undisputed that Guardian employed an English reinsurance broker and an English reinsurance company in a business relationship that lasted several years and included multiple instances of communication and correspondence between the organizations. Nevertheless, Plaintiff attempts to distance itself from the foreign forum by arguing that Defendant initiated contact with Guardian and that Defendant has not established conclusively that Guardian's employees traveled to England for business purposes. Plaintiff avers that the question of which party initiated contact in the formation of a contract is a factor courts should consider regarding minimum contacts, citing *Burger King, Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), and *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1222–23. However, these cases do not mention initiation of contact as a determining factor. Indeed, the Third Circuit in *Mellon* stated that the *Burger King* decision required it to consider "the defendants contacts with the [forum] before, during, and after the dates the loans were made and the guaranties were executed." *Id.* at 1224. Furthermore, although the number of trips made by Guardian's personnel to England is in dispute (*see* Pl.'s Reply Mem. at 6), the courts have "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction" when "a party has received the benefits and protec-

---

**5.** Since all the bases for jurisdiction to adjudicate listed in section 421 satisfy the requirements of due process in the United States, any foreign judgment rendered on one of those bases will be entitled to recognition. Rest. 3rd, Restatement of the Foreign Relations Law of the United States § 482, comment c.

**6.** After citing *Burger King* extensively, Plaintiff simply notes that an individual's contract with an out-of-state party cannot by itself establish sufficient minimum contacts with that forum, *see Burger King*, 471 U.S. at 478, 105 S.Ct. 2174, a point that Defendant does not contest.

tions of the forum's laws by engaging in business activities with a forum resident." *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. Therefore, the Court finds that Defendant has effectively demonstrated that Plaintiff engaged in significant activity in England and availed itself of the privilege of doing business there.

Once a party has made a prima facie case for jurisdiction based upon minimum contacts, "the burden falls upon [the other party] to show that the assertion of jurisdiction is unconstitutional." *Mellon*, 960 F.2d at 1226. Under this analysis, the Court may examine the "fairness factors" listed in *Burger King* which include: the burden on Defendant, the forum's State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. 471 U.S. at 477, 105 S.Ct. 2174.

Plaintiff argues that the English Court's exercise of personal jurisdiction over Guardian was inconsistent with fair play and substantial justice. Specifically, Plaintiff argues that: the legal costs of litigating in London were prohibitively high; Virgin Islands statutes require that all persons engaged in the insurance business covering risks in the Virgin Islands are subject to Virgin Islands law and must act in good faith[7]; English law precluded Guardian from raising a breach of good faith in contracting; England had little interest in the case; and the Virgin Islands has a fundamental interest in insurance transactions which affect the Virgin Islands and its residents.

Plaintiff's arguments do not demonstrate that the exercise of the English Court's jurisdiction was unconstitutional. First, Plaintiff has not substantiated the

prohibitive costs of litigating in England other than to state that Defendant's attorneys fees were over $300,000. That figure alone does not demonstrate prohibitive costs. Furthermore, the fact that Guardian could not raise all of its claims in England does not mean due process has been violated. As noted above, the Third Circuit has recognized that English legal procedure comports with American principles of due process. *See Somportex*, 453 F.2d at 441. The fact that a particular cause of action does not exist or has been abolished in the foreign state where enforcement is sought does not necessarily make enforcement of a judgment based on such an action contrary to the public policy of the recognizing state. *See* Rest. 3rd, Restatement of the Foreign Relations Law of the United States § 482, comment f.

Finally, the fact that the Virgin Islands has some interest in the litigation does not make it unconstitutional for the issues to be litigated in another forum that also has such interest. As stated previously by this Court, "[a]lthough the Virgin Islands clearly has an interest in promoting good faith in insurance transactions, . . ., this Territorial interest alone will not justify a challenge to international comity." *Guardian Ins. Co. v. Bain Hogg Intl. Ltd.*, No.1996–0180, 1999 WL 391893, slip op. at 5 (D.V.I. September 27, 1996); *see also, Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1357 (6th Cir.1992) ("[A]lthough evasion of an important national policy might outweigh certain principles of international comity, we question whether the public policy of one state could ever outweigh those principles." (emphasis added)). Thus, the Court finds that Defendant has demonstrated sufficient minimum contacts between Guardian and England to satisfy the *International Shoe* standard proposed by Plaintiff and that Plaintiff has not shown that the assertion of jurisdiction by the English Court is unconstitutional.

---

**7.** The Virgin Islands Insurance Code states: "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated in good faith, abstain from deception, and practice honesty and equity in all insurance matters." 22 V.I.C. § 2.

In sum, whether analyzed under the Restatement or the Uniform Act, Defendant has demonstrated that the English Court properly asserted personal jurisdiction over Plaintiff.

### E. Is English Court's holding repugnant to Virgin Islands public policy?

Under both the Restatement and the Uniform Act, the Court has the discretion to invalidate the English Court's ruling on the ground of repugnance to Virgin Islands Policy. *See* Rest. 3rd, Restatement of the Foreign Relations Law of the United States § 482(2)(d); 5 V.I.C. § 565(b)(3). Plaintiff argues that the English Court's ruling is repugnant to Virgin Islands public policy by raising its previous point that Plaintiff did not have the ability to bring a bad faith claim against HIB in England. For the reasons listed *supra* Part I.D., this argument fails.

### F. Was English forum seriously inconvenient to Plaintiff?

The Uniform Act permits, but does not require, the Court to determine that a foreign judgment is inconclusive due to the inconvenience of the forum. *See* 5 V.I.C. § 565(b)(6). However, this ground should be considered when jurisdiction is based only on personal service. *Id.* Such is not the case here and this argument can be disregarded.

### G. *Res Judicata*

 Defendant also argues that the effect of recognizing the Commercial Court's judgment is to bar Guardian's claims against HIB by the principles of *res judicata.* As defined by Virgin Islands law, *res judicata* is the "legal principle that a final judgment, rendered upon the merits, without fraud or collusion, by a court which had jurisdiction over the parties and the subject matter, is conclusive in a subsequent action between the parties or their privies based upon the same cause of action." *Bank of Nova Scotia v. Bloch,* 533 F.Supp. 1356, 1359 (D.V.I.1982) (citing Restatement (Second) of Judgments, § 18); *see also, Cramer v. General Tele. and Elec., Corp.,* 582 F.2d 259, 266 (3d Cir. 1978) (holding that, absent circumstances which would render inequitable the application of *res judicata,* a judgment on the merits will generally not be disturbed by a court in a subsequent suit involving the same parties).

Defendant has demonstrated, and Plaintiff does not contest, that the Commercial Court's judgment involved the same parties as the instant suit, was without fraud or collusion, was based upon the merits, and was final. Furthermore, according to the analysis set forth *supra* Part I.D, the English Court had personal jurisdiction over Guardian in addition to subject matter jurisdiction over the reinsurance contract dispute. The remaining issue before the Court, then, is Plaintiff's argument that its suit against HIB should not be barred because the English Court refused to hear Guardian's claim of bad faith asserted under 22 V.I.C. § 1, a claim that is not recognized by English law.

According to the Restatement (Second) of Judgments, if a court in the first action "would clearly not have had jurisdiction to entertain the omitted theory of ground ..., then a second claim in a competent court presenting the omitted theory or ground should be held precluded." Rest. 2nd, Restatement of Judgments § 25, comment e. Thus, since Guardian's bad faith claim could not be brought in the English Court, Guardian is not barred from proceeding with this claim in this Court. However, Plaintiff's remaining claims are identical to those decided by the English Court. Therefore, they are barred by the principles of *res judicata. See Huck v. Dawson,* 106 F.3d 45, 48 (3d Cir.1997).

### II. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment seeking a declaration from this Court that HIB lacked personal jurisdiction over

546

Guardian, that the English Court had no authority to render any judgment against Guardian, and that *res judicata* principles do not bar Guardian's suit against HIB. Plaintiff offers its opposition to HIB's motion as the basis for its own motion for summary judgment. Therefore, all of the relevant points have been addressed above and, for the same reasons that Defendant's motion is granted, Plaintiff's motion is denied.

### III. Conclusion

In pursuing their respective summary judgment motions, Defendant and Plaintiff both attest, and the Court finds, that no genuine issues of material fact exist. The Court also finds that Defendant is entitled to summary judgment as a matter of law. The English Court had personal jurisdiction over Guardian pursuant to the Restatement, the Uniform Act, and the minimum contacts test proposed by Plaintiff. In addition, the English Court's holding does not trigger any of the mandatory or discretionary reasons for invalidating that holding. Accordingly, as a final judgment on the merits, the English Court's holding is enforceable and serves to bar Guardian's identical claims from being adjudicated in this Court. Defendant's motion is granted pursuant to the attached Order.