**NICOR INTERNATIONAL CORPORATION and Consultores de la Cuenca Del Caribe a/k/a Carib Consult, Plaintiffs,**

v.

**EL PASO CORPORATION f/k/a Oceano Corporation or The Coastal Corporation (later The El Paso Energy Corporation), Defendants.**

No. 02–21769–CIV.

United States District Court, S.D. Florida.

May 25, 2004.

---

7. See DE # 43 and 45.

8. See DE # 59.

David Ian Katzman, John D. McClune, Schaden, Katzman, Lampert & McClune, Troy, MI, Richard F. Schaden, Schaden, Katzman, Lampert & McClune, Broomfield, CO, for Plaintiff.

Pedro Julio Martinez–Fraga, Luis Miguel O'Naghten, Alan Theodore Dimond, Greenberg Traurig, Miami, FL, for Defendant.

### ORDER DENYING PLAINTIFFS' COMBINED MOTION FOR RE-HEARING, RECONSIDERATION, ALTERATION, AND/OR AMEND-MENT OF ORDER AND ORDER ON VARIOUS OTHER MOTIONS

MARRA, District Judge.

This Cause is before the Court on Plaintiffs Nicor International Corporation ("Ni-

cor") and Consultores de la Cuenca Del Caribe's a/k/a/ Carib Consult ("Carib") Combined Motion for Rehearing, Reconsideration, Alteration, and/or Amendment of Order Pursuant to Rule 59 and 60 ("Motion for Reconsideration"); Motion to Amend Court Findings Pursuant to Rule 52(b); Motion to Supplement Record; and Motion to Amend Complaint Pursuant to Rule 15, filed December 9, 2003 (DE 80). Defendants, El Paso Corporation ("El Paso") or The Coastal Corporation ("Coastal") (collectively "El Paso/Coastal"), filed a response on December 29, 2003 (DE 90). Plaintiffs filed a reply on January 8, 2004 (DE 92.) The Court has carefully considered the motions, the pertinent portions of the record, and is otherwise advised in the premises. The matter is now ripe for review.

## I. Background

On November 24, 2003, this Court granted Defendants' Motion for Summary Judgment, finding that Defendants were entitled to summary judgment on all of the claims in the Second Amended Complaint and on Count I of Defendant Coastal's Counterclaim against Plaintiffs. Plaintiffs now ask the Court to reconsider its ruling and/or grant them to leave to supplement the record and/or grant them leave to amend the Complaint.[1]

## II. Motion for Reconsideration or Alteration

Plaintiffs ask this Court to reconsider its ruling based on numerous grounds. Although the Court has carefully considered each of the grounds for reconsideration asserted by Plaintiffs, the Court limits its discussion to the following: (i) whether state or federal law applies; (ii) the application of principles of comity under applicable state common law; (iii) the effect of the rulings by the Dominican courts on the Sole Arbitrator's decision-making authority; (iv) the place of arbitration; and (v) Article V(2)(b) of the New York Convention and the doctrine of collateral estoppel.

### A. State Law Applies

■ Plaintiffs argue that the Court's failure to consider the recognition of the Dominican Republic sentence under federal common law principles of comity was error. (Motion for Reconsideration at 3.) However, it is well-established in the Eleventh Circuit that "actions to recognize and enforce foreign judgments in diversity cases are matters of *state law*." *Turner Entm't Co. v. Degeto Film*, 25 F.3d 1512, 1520 n. 12 (11th Cir.1994) (emphasis added).[2] Admittedly, some courts and commentators have suggested that, because relations between the United States and foreign nations are matters of United States foreign policy, the recognition of a judgment entered by a foreign nation should be governed by reference to federal law. *Hunt v. BP Exploration Co. (Libya) Ltd.*, 492 F.Supp. 885, 892 (N.D.Tex.1980); Restatement (Second) of Conflicts of Law § 98, cmt. c (Supp.1988). According to the Restatement (Second) of Conflicts of Law, federal law might be applied where "application of a State rule on the recognition of

---

1. The Court incorporates by reference the factual background set forth in this Court's Order Granting Defendants' Motion for Summary Judgment. The Court makes two corrections to those facts. The Second Amended Complaint ("Complaint") was filed on July 18, 2002, not July 18, 2003. The Answer and Counterclaim was filed on August 13, 2002, not on August 13, 2003.

2. The *Turner Entertainment* court's consideration of comity under federal common law was expressly limited to the abstention context. *Turner Entm't*, 25 F.3d at 1520 n. 12. The court stated that whereas international abstention is a matter of federal law, actions to recognize and enforce foreign judgments in diversity cases are matters of state law. *Id.*

foreign nation judgments ... would result in the disruption or embarrassment of the foreign relations of the United States." However, the Eleventh Circuit has chosen to follow the majority rule, which holds in diversity cases under *Erie R.R.Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that state law governs the recognition of foreign judgments. *Turner Entm't,* 25 F.3d at 1520 n. 12; *cf. Phillips USA, Inc. v. Allflex USA, Inc.,* 77 F.3d 354, 359 (10th Cir.1996) ("We believe that the view accepted by the revised Restatement is correct: '[U]nless and until some federal statute or treaty declares otherwise, it is state, not federal, law that governs the effect to be given foreign judgments.'"); *Success Motivation Institute of Japan Ltd. v. Success Motivation Institute, Inc.,* 966 F.2d 1007, 1009–10 (5th Cir.1992) ("*Erie* applies even though some courts have found that these suits necessarily involve relations between the U.S. and foreign governments, and even though some commentators have argued that the enforceability of these judgments in the courts of the United States should be governed by reference to a general rule of federal law."). Accordingly, the Court concludes it correctly applied state law in determining whether to recognize the judgment of the Dominican court.

### B. Recognition of the Foreign Judgment Should Not be Granted Under State Law

#### 1. Whether Texas or Florida Law Applies

The next issue which Plaintiffs ask the Court to reconsider is its application of Florida law to the issue of the recognition of a foreign judgment. Plaintiffs argue that Texas law should apply. In this Court's Order Granting Defendants' Motion for Summary Judgment, the Court applied Florida law which is the law of the forum where recognition was being sought. *Guardian Ins. Co. v. Bain Hogg Int'l Ltd.,* 52 F.Supp.2d 536, 540 (D.Vi.1999) ("the law of the state *where recognition is sought* should be applied in determining whether recognition should be granted") (emphasis added). Notably, in their Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, it was Plaintiffs' position that the foreign judgment was entitled to recognition under either Florida or Texas law, and thus Plaintiffs did not argue for application of Texas law over Florida law. (Motion for Reconsideration at 20–26.) Plaintiffs now posit that Texas law should apply because Texas is the state that has the most significant relationship to the dispute and because the choice-of-law provision in the parties' agreement provides that the laws of the state of Texas shall apply. (Motion at 5.) [3]

However, Plaintiffs have not provided any case law or analysis supporting their argument that the "most significant relationship test" or the parties' contractual choice-of-law provision should govern the recognition of a foreign judgment. (Motion for Reconsideration at 5.) In Florida, the "most significant relationship test" applies to *tort* claims. *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.,* 341 F.3d 1292, 1301 (11th Cir.2003). Plaintiffs' claim seeking recognition of a foreign judgment does not sound in tort. Moreover, Plaintiffs have not shown that the state of Texas has the dominant interest in having its rules regarding the recognition of a foreign judgment apply in this case. Additionally, the choice-of-law provision in the parties' agreement is exceedingly narrow, providing that "[t]he parties

**3.** In Plaintiff's memorandum of law in response to Defendants' motion for summary judgment, Plaintiffs argued the application of both Florida and Texas's version of the Uniform Act.

agree that *this contract* shall be governed by the laws of the State of Texas, U.S.A." (emphasis added). (PSA at ¶ 4.) Plaintiffs' claim for domestication of the foreign judgment is not dependent upon the parties' contract. Furthermore, Plaintiffs have not attempted to argue that the scope of the choice-of-law provision encompasses a dispute concerning the recognition of a foreign judgment. For these reasons, and in the absence of any supporting legal authority, this Court is not inclined to hold that Texas law necessarily applies to the recognition of the Dominican Republic sentence. Nevertheless, in an abundance of caution, the Court will consider the issue under both Florida and Texas law.

### 2. Florida Law

For the reasons stated in this Court's Order granting Defendants' Motion for Summary Judgment, including the reason that the sentence issued by the Dominican court does not award or deny a specific "sum of money," this Court cannot recognize the Dominican sentence as a judgment under Florida's Uniform Out–of–Country Money–Judgments Recognition Act ("Uniform Act"), §§ 55.601–607, Fla. Stat.

■■■ Plaintiffs argue that to the extent that the Uniform Act does not apply, common law principles of comity require the recognition of the Dominican Republic sentence. Common law principles of comity continue to guide Florida courts in determining whether to recognize a foreign judgment not governed by the Uniform Act, such as judgments granting injunctive relief. *Cochrane v. Nwandu*, 855 So.2d 1276, 1277 (Fla.Dist.Ct.App.2003). Under Florida common law, such "a foreign decree is entitled to comity where (1) the parties have been given notice and opportunity to be heard, (2) where the foreign court had original jurisdiction, and (3) where the foreign decree does not offend the public policy of the State of Florida." *Id.*

■■■ Notably, Florida courts have not considered the issue of whether common law principles of comity apply to the recognition of a foreign county's award of monetary damages when the amount of the damages is left for future determination.[4] However, even if common law principles of comity were to apply in such a case, the Court finds that the decision of the Dominican court in this case does not warrant recognition since it offends the strong public policy in the State of Florida favoring arbitration. *See In re Arbitration Between Chromalloy Aeroservices and the Arab Republic of Egypt*, 939 F.Supp. 907, 913–14 (D.D.C.1996) (refusing to recognize decision of Egyptian court nullifying arbitration award because to do so would be contrary to clear U.S. public policy in favor of final and binding arbitration of commercial disputes).

■■■ There is a strong public policy in the State of Florida in favor of arbitration as a means of settling disputes. *Roe v. Amica Mutual Ins. Co.*, 533 So.2d 279, 281 (Fla.1988) ("Under Florida law ... arbi-

---

4. The Court notes that Florida courts considering the recognition of foreign judgments under common law follow the Restatement (Second) Conflict of Laws. *Nahar v. Nahar*, 656 So.2d 225, 229 (Fla. 3d DCA 1995). Plaintiffs cite to sections 92 and 98 of the Restatement (Second) Conflict of Laws for the apparent authority that the Dominican sentence should be entitled to recognition. (Motion at 4 n. 5.) However, the Restatement further provides that a foreign nation judgment for the payment of money will nevertheless not be enforced unless the amount to be paid has been finally determined under the local law of the nation of rendition. Restatement (Second) Conflict of Laws ¶¶ 100, 108. Thus, even if the Dominican sentence were entitled to recognition, it would not be entitled to enforcement since it does not award a final sum of money.

tration is a favored means of arbitration of dispute resolution ...."); *Alexander v. Minton*, 855 So.2d 94, 96 (Fla.Dist.Ct.App. 2003) ("Florida favors arbitration to settle disputes outside the courtroom."); *Boston Bank of Commerce v. Morejon*, 786 So.2d 1245, 1246–47 (Fla.Dist.Ct.App.2001) ("Florida law strongly favors the resolution of disputes by way of arbitration...."); *Cassedy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 751 So.2d 143, 150 (Fla. Dist.Ct.App.2000) (noting the "long-standing public policy in favor of arbitration proceedings and the expeditious resolution of cases through such proceedings"); *KFC Nat'l Management Co. v. Beauregard*, 739 So.2d 630, 630 (Fla.Dist.Ct.App.1999) ("It is now an axiom of federal and Florida law that written agreements to arbitrate are binding and enforceable. Public policy favors arbitration as an efficient means of settling disputes, because it avoids delays and expenses of litigation."); *Beverly Hills Development Corp. v. George Wimpey, Inc.*, 661 So.2d 969, 971 (Fla.Dist.Ct.App. 1995) ("There is a strong public policy favoring arbitration."). The policy of Florida is to resolve all doubts about the issue of waiver of arbitration in favor of arbitration, not against it. *Ronbeck Construction Co. Inc. v. Savanna Club Corp.*, 592 So.2d 344, 346 (Fla.Dist.Ct.App.1992).

The decision by the court of the Dominican Republic which Plaintiffs ask this Court to recognize is antithetical to the strong public policy in the State of Florida favoring arbitration. The policy in favor of arbitration in the State of Florida is unmistakable, long-standing, and supported by ample case law, and is not based upon mere judicial notions of public interest. The Dominican court made the determination that Nicor waived its right to arbitration based only upon a series of ambiguous letters exchanged between the parties and despite Nicor's clear insistence on arbitration throughout the proceedings in the Dominican Republic.

(Plaintiffs' Exhibit 3 to Response to Defendants' Motion for Summary Judgment.) The decision of the Dominican court to find a waiver of arbitration based upon an insubstantial set of facts imbued with uncertainty was contrary and offensive to Florida's strong public policy to resolve all doubts about waiver in favor of arbitration. As such, the Dominican court's decision is not entitled to comity under Florida common law. *Cochrane*, 855 So.2d at 1277 (a foreign decree is entitled to comity only if "the foreign decree does not offend the public policy of the State of Florida").

### 3. Texas Law

■ If Texas common law were to apply to the issue of the recognition of the decision of the Dominican Republic court, the Court's ultimate conclusion would not be different.

Like Florida, Texas has adopted the Uniform Foreign County Money Judgment Recognition Act. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 36.001–36.008. Under Texas's version of the Uniform Act, this Court cannot recognize the Dominican sentence as a judgment because it does not grant recovery of a *sum* of money. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 36.004.

Even where the Uniform Act does not technically apply, Texas courts nevertheless apply the provisions of the Uniform Act, considering it "persuasive if not binding authority." *Brosseau v. Ranzau*, 81 S.W.3d 381, 388 (Tex.Ct.App.2002). Pursuant to subsection (5) of 36.005(b) of Texas's Uniform Act, a foreign judgment need not be recognized if "[t]he proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court." *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 36.005(b)(5); *The Courage Co., L.L.C. v. The Chemshare Corp.*, 93

S.W.3d 323, 331–38 (Tex.Ct.App.2002) (holding that a Japanese judgment was not entitled to recognition because the proceedings in the Japanese court were contrary to an agreement between the parties to resolve their disputes by arbitration). Thus, even if the Uniform Act does not apply in this case, the sentence would not be entitled to recognition under Texas common law because the proceedings in the Dominican Republic were contrary to the parties' agreement to settle any dispute in connection with the Professional Services Agreement ("PSA") by arbitration. Similarly, the Dominican Republic sentence is not entitled to recognition because it is antithetical to the strong public policy in the State of Texas favoring arbitration. *Prudential Securities Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995) ("Arbitration of disputes is strongly favored under federal and state law. . . . Accordingly, a presumption exists against the waiver of a contractual right to arbitration."); *Brazoria County v. Knutson,* 142 Tex. 172, 176 S.W.2d 740, 743 (1943). As such, the Court concludes that even under Texas law the Dominican decision is not entitled to recognition.

## C. The Sole Arbitrator's Ruling on the Issue of Waiver

Plaintiffs argue that the Sole Arbitrator was precluded from re-litigating the issue of waiver because the issue had been previously decided by the Dominican court. To benefit from the doctrine of collateral estoppel, Plaintiffs must show that the burden of persuasion as to the issue of waiver in the arbitration proceeding was not significantly heavier than the burden of persuasion in the Dominican proceedings. *Johnson v. Florida,* 348 F.3d 1334, 1347 (11th Cir.2003) (recognizing that as a prerequisite for the application of collateral estoppel, the party arguing for its application must show that "the burden of persuasion in the subsequent action is not significantly heavier than in the prior proceeding"). The record shows that in accordance with United States and Texas law the Sole Arbitrator imposed a "heavy burden" on Plaintiffs to show that Defendants waived arbitration. The Sole Arbitrator stated that "[a]ny doubt as to the existence of a waiver shall need to be resolved against finding a waiver, and therefore the party seeking to establish a waiver bears a heavy burden. Waiver of arbitration is not be lightly inferred." (Exhibit C to Defendants' Amended Statement of Material Facts.)[5] In contrast, the Dominican court's ruling on the issue of waiver is noticeably silent as to the burden of proof which the court applied. According to the Affidavit of Dr. Juan Ferrand, in contract cases under Dominican Republic law, the burden applied by the Dominican Republic courts is merely "the greater weight of the evidence." (Exhibit attached to Plaintiffs' Reply on Motion for Reconsideration.) The burden of persuasion applied by the Sole Arbitrator was therefore significantly heavier than the burden applied the Dominican Republic courts. Accordingly, Plaintiffs have not met their burden of showing entitlement to the application of the doctrine of collateral estoppel. Thus, the Court cannot conclude that the Sole Arbitrator was precluded from considering the issue of waiver under the doctrine of collateral estoppel.

Moreover, based upon the Court's review of the record, it is unclear whether Plaintiffs even raised the *specific* issue of

---

**5.** Applying the heavy burden of proof, the Sole Arbitrator concluded that the record "not only does not show that a waiver occurred, but rather forces the opposite conclusion. Various procedural steps taken before the courts of the Dominican Republic evidence Claimant's efforts to enforce the arbitration agreement found in the PSA." (Exhibit C to Defendants' Amended Statement of Material Facts.)

collateral estoppel or issue preclusion before the Sole Arbitrator. The Eleventh Circuit has held that an arbitrator is competent to decide the issue of collateral estoppel. *Weaver v. Florida Power & Light Co.*, 172 F.3d 771, 774 (11th Cir. 1999).[6] The Sole Arbitrator was clearly aware of the previous inconsistent ruling of the Dominican Republic court on the issue of waiver. Plaintiffs cannot argue that the Sole Arbitrator ignored the preclusive effect of the ruling of the Dominican Republic court, when it does not appear, at least from this Court's review of the present record, that Plaintiffs made the argument that the Sole Arbitrator was precluded from considering the issue of waiver under the doctrine of collateral estoppel.

For the foregoing independent reasons, the Court concludes that the doctrine of collateral estoppel did not prevent the Sole Arbitrator from deciding that Plaintiffs had not met their "heavy" burden of showing that Defendants had waived their right to arbitration.

## D. Place of Arbitration

Plaintiffs contend that the Court made a factual error as to the place of arbitration and failed to consider that Defendants admitted that the Final Arbitration Award was made in France. In the Order Granting Defendants' Motion for Summary Judgment, this Court concluded that the Final Arbitration Award was made in the United States. *See* part IV. B of this Court's Order Granting Defendants' Motion for Summary Judgment. However, whether the place of arbitration was the United States, Mexico, or France, none of the grounds for non-recognition under the New York Convention apply to the facts of this case. *See* part IV. B of this Court's Order Granting Defendants' Motion for Summary Judgment.[7]

## E. Article V(2)(b) of the New York Convention and Collateral Estoppel

■ Plaintiffs also contend that the doctrine of collateral estoppel should be

---

**6.** The Court cites the *Weaver* opinion herein and in its prior Order Granting Defendants' Motion for Summary Judgment solely for the proposition that an arbitrator is competent to decide the issue of collateral estoppel. *Weaver*, 172 F.3d at 774. The *Weaver* court reasoned that the federal policy favoring arbitration "rules out 'any judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals.'" *Weaver*, 172 F.3d at 774 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The portion of the *Weaver* opinion that notes that a district court may vacate an arbitration award based on the arbitrator's manifest disregard of the law, *Weaver*, 172 F.3d at 775 n. 9, is inapplicable to the facts of this case involving a foreign arbitral award. *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte*, 141 F.3d 1434, 1445–46 (11th Cir.1998) (stating that grounds for refusing to recognize a

foreign arbitral award under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards are exclusive); *M & C Corp. v. Erwin Behr*, 87 F.3d 844, 850–51 (6th Cir.1996) (concluding that the grounds justifying refusal to recognize a foreign arbitral award do not include miscalculations of fact or manifest disregard of the law). In any event, there is no evidence that the Sole Arbitrator disregarded any meritorious defense properly presented to *him*.

**7.** The case of *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir.1997) (recognizing that grounds other than those set forth in the New York Convention may apply to a motion to set aside or vacate a foreign arbitral award rendered in the United States), which is cited by Plaintiffs in their Motion for Reconsideration, is not binding law in this circuit, and appears to be contrary to the case of *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte*, 141 F.3d 1434 (11th Cir.1998).

considered as a defense to the recognition of the Final Arbitration Award under Article V(2)(b) of the New York Convention. However, the doctrine of collateral estoppel does not preclude this Court from confirming the Final Arbitration Award because, despite Plaintiffs' suggestion otherwise, there is no evidence in the record that any other court or tribunal has expressly decided the precise issue of whether to confirm the Final Arbitration Award under the provisions of the New York Convention.

### III. Motion to Supplement the Record

Plaintiffs complain that the Court dismissed its claims and decided to recognize the Final Arbitration Award without allowing the parties to engage in discovery. Plaintiffs therefore ask the Court to grant leave for Plaintiffs to supplement the record. However, additional discovery or record evidence would not change the Court's ultimate conclusion.

First, as to the claim for domestication of the Dominican sentence asserted in Count I of the Second Amended Complaint, additional discovery or record evidence would not be helpful since the Court's refusal to recognize the Dominican sentence is based upon pure legal grounds. Similarly, additional discovery or record evidence would not revive the claim for breach of contract asserted in Count II since that claim is barred as a result of the res judicata effect of the Sole Arbitrator's Final Arbitration Award. Additional discovery or record evidence also would not revive Plaintiffs' tort claims for tortious interference with contract and/or prospective business relations (Count III), outrageous conduct causing severe emotional distress (Count V), and negligence (Count VI), as those claims are not legally cogni-

zable for the reasons stated in the Order Granting Defendants' Motion for Summary Judgment. *See* part IV. sections A & C of the Court's Order Granting Defendants' Motion for Summary Judgment

Lastly, for the reasons stated below, the Court holds that Plaintiffs' claim asserted in Count IV alleging a violation of Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO"), Fla. Stat. § 895.01 *et seq.*, is also barred as a matter of law, and that additional discovery would therefore be futile. First, under Florida's choice of law principles, Florida law does not apply to Plaintiffs' RICO claim. *See* Order Granting Defendants' Motion for Summary Judgment n. 16. Thus, Plaintiffs' RICO claim as asserted under Florida law fails as a matter of law.

■■■ Second, and more importantly, the alleged acts committed by Defendants do not support a RICO claim. Section 895.03 of the Florida Statutes makes it unlawful for any person associated with any enterprise to conduct or participate, directly or indirectly, in such an enterprise through a pattern of racketeering. § 895.03(3), Fla. Stat. The elements of a claim under Florida's RICO statute are: (1) conduct or participation in an enterprise; and (2) a pattern of racketeering activity. *Lugo v. State,* 845 So.2d 74, 97 (Fla.2003). As provided in section 895.02 of the Florida Statutes, the term "racketeering activity" means the commission [8] of "any crime which is chargeable by indictment or information" under the enumerated provisions of the Florida Statutes and "any conduct defined as 'racketeering activity' under 18 U.S.C. § 1961(1)." § 895.02(1)(a)-(b), Fla. Stat.

---

8. A " 'Racketeering activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit ..." § 895.02(1), Fla. Stat.

The crimes enumerated in subsection (a) of section 895.02(1) include, but are not limited to, fraud under Chapter 817 of the Florida Statutes, extortion under Section 836.05 of the Florida Statutes, bribery and misuse of a public office under Chapter 838 of the Florida Statutes, and obstruction of justice under Chapter 843 of the Florida Statutes. § 895.02(1)(a)(27), (32), (34), (35), Fla. Stat. Under 18 U.S.C. § 1961(1), the term racketeering activity means (a) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled or listed substance, which is chargeable under state law and punishable by imprisonment for more than one year; (b) any act which is indictable under specified provisions of Title 18 of the United States Code; (c) any act which is indictable under specified provisions of Title 29 of the United States Code; (d) any offense involving fraud in connection with a case under Title 11 of the United States Code, securities fraud, or controlled substances or listed chemicals which is punishable by law; (e) any act which is indictable under the Currency and Foreign Transactions Reporting Act; (f) any act which is indictable under specified sections of the Immigration and Nationality Act and committed for the purpose of financial gain; and (g) any act that is indictable under any provision listed in section 2332b(g)(5)(B). 18 U.S.C. § 1961(1).

In this case, Plaintiffs allege that Defendants engaged in the following racketeering activities: a violation of the Florida Deceptive and Unfair Trade Practice Act,[9] bribery, misuse of a public office, conspiracy, fraud, extortion, mail fraud, wire fraud, and obstruction of justice. (Second Amended Complaint ¶¶ 37, 38.) In support thereof, Plaintiffs allege that Defendants and its intermediaries/agents, including the Overseas Private Investment Corporation ("OPIC"), wrongfully coerced and convinced the Dominican Republic court to rule in Defendants' favor and/or refuse to enforce the sentence entered there. (Second Amended Complaint ¶ 31.) Plaintiffs allege that Defendants placed economic pressure on, made misrepresentations to, and exerted undue influence on the Dominican Republic government. (Second Amended Complaint ¶ 32.) Elsewhere in the Complaint, Plaintiffs allege that Defendants provided false information to OPIC and conspired with the United States Government, which prompted OPIC to issue a letter to the President of the Dominican Republic threatening to sabotage and withhold foreign investment dollars in the Dominican Republic if the judgment against Defendants were to be honored. (Second Amended Complaint ¶ 24.) Plaintiffs further allege that Defendants have maliciously threatened to injure Plaintiffs and expose Plaintiffs to disgrace, and have imputed a deformity to Plaintiffs, with the intent to extort money or a pecuniary advantage against Plaintiffs in the Dominican Republic lawsuit. (Second Amended Complaint ¶ 36.) Plaintiffs also allege that Defendants have made false statements and have attempted to obtain monies dishonestly. (Second Amended Complaint ¶ 37.) Finally, Plaintiffs assert that Defendants misused OPIC and the Dominican Republic through the use of false information and large campaign contributions and have attempted to obstruct justice in the Dominican Republic. (Second Amended Complaint ¶ 38.)

---

**9.** The definition of racketeering activity under Florida's RICO statute does not include violations of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq*. Thus, the Court does not consider whether the allegations in the Second Amended Complaint support such a violation.

However, as discussed below, the allegations in the Second Amended Complaint do not support that Defendants committed any crime, much less bribery, misuse of a public office, conspiracy, fraud, extortion, mail fraud, wire fraud, and obstruction of justice.

■■■ As to the allegations of mail and wire fraud, the Eleventh Circuit has stated that when a plaintiff brings a civil RICO claim predicated upon mail or wire fraud, the plaintiff must prove that he was the target of the defendant's scheme to defraud and that he relied to his detriment on the misrepresentations made in furtherance of that scheme. *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1360 (11th Cir.2002). As a natural corollary, a plaintiff lacks standing to assert a mail or wire fraud claim based upon misrepresentations directed toward another person or entity. *Byrne v. Nezhat,* 261 F.3d 1075, 1110 (11th Cir.2001). In this case, Plaintiffs allege that Defendants made misrepresentations directed toward third parties, i.e. the Dominican Republic and OPIC. (Second Amended Complaint ¶¶ 32 ("misrepresentations were made to the Dominican Republic Government and the court system by Defendant, through OPIC, to the material detriment and harm of the Plaintiffs"), 24 ("Defendant provided false information to OPIC").) Plaintiffs do not allege that

Defendants made any misrepresentations to Plaintiffs or that Plaintiffs relied to their detriment on any of the misrepresentations. As such, Plaintiffs do not have standing to pursue their RICO claim based upon mail or wire fraud.

■■■ For the same reason of lack of standing, Plaintiffs cannot pursue a RICO claim based upon a violation of any of the provisions of Chapter 817 since any false statements were made to the Dominican Republic and OPIC, not Plaintiffs. *See Byrne,* 261 F.3d at 1111. Furthermore, there are no allegations or evidence tending to support a violation of any of the provisions of Chapter 817 of the Florida Statutes relating to fraudulent practices.

■■■ Plaintiffs' allegation that Defendants committed the crime of bribery is also fatally flawed. Bribery is committed by corruptly giving, offering, or promising anything of value to influence an official action. § 838.015, Fla. Stat.; 18 U.S.C. § 201.[10] The elements of a bribery are (1) knowledge on the part of the accused of the official capacity of the person to whom the bribe is offered, (2) the offering of a thing of value, and (3) an intent to influence official action by the person to whom the bribe is offered. *Donnelly v. State,* 693 So.2d 125, 126 (Fla.Dist.Ct.App.1997). There are no allegations in the Second

---

**10.** Under Florida law, bribery means "corruptly to give, offer, or promise to any public servant, or, if a public servant, corruptly to request, solicit, accept, or agree to accept for himself or herself or another, any pecuniary or other benefit not authorized by law with an intent or purpose to influence the performance of any act or omission which the person believes to be, or the public servant represents as being, within the official discretion of a public servant, in violation of a public duty, or in performance of a public duty." § 838.015(1). Under federal law, whoever "directly or indirectly, corruptly gives, offers, or promises anything of value to any public official or person who has been selected to be

a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—(A) to influence any official act; or (B) to influence such public official or person who has been selected to be a public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or (C) to induce such public official or such person who as been selected to be a public official to do or omit to do any act in violation of the lawful duty of such official or person ... shall be fined or imprisoned." 18 U.S.C. § 201(b)(1) (bribery).

Amended Complaint or any evidence that support a claim for bribery. Thus, Plaintiffs cannot maintain a RICO claim based upon the predicate act of bribery.

██ Plaintiffs' RICO claim based upon extortion also fails as a matter of law. In this case, Plaintiffs allege that Defendants have maliciously threatened injuries to Plaintiffs, have threatened to expose Plaintiffs to disgrace, and have imputed a deformity to another, "with the intent to extort money or a pecuniary advantage against Plaintiffs in the Dominican Republic pending lawsuit." (Second Amended Complaint ¶ 36.) The definition of extortion under Florida law includes the malicious threatening[11] of another with the intent to extort money or a pecuniary advantage. § 836.05, Fla. Stat. Additionally, under federal law, extortion means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened, violence, fear, or under color of official right." 18 U.S.C. § 1951. However, the allegations of the Second Amended Complaint and the evidence do not support a threat to extort money. Rather, the allegations and evidence show that Defendants, through OPIC, made threats that if the Dominican Republic did not recognize the arbitration award, it would withhold financial support of third party investments in the Dominican Republic. There are no allegations or evidence of threats to extort money and no allegations or evidence that Defendants wrongfully obtained any property from another. Accordingly, Plaintiffs' RICO claim based upon extortion fails as a matter of law.

Plaintiffs' assertion of a RICO claim against Defendants based upon obstruction of justice under chapter 843 of the Florida Statutes also fails. None of the allegations in the Second Amended Complaint even remotely establish a claim for obstruction of justice. § 843.01, Fla. Stat. (resisting officer with violence); § 843.02, Fla. Stat. (resisting officer without violence); § 843.021, Fla. Stat. (unlawful possession of a concealed handcuff key); § 843.025, Fla. Stat. (depriving officer of a means of protection or communication); § 843.03, Fla. Stat. (obstruction by disguised person); § 843.04, Fla. Stat. (refusing to assist prison officials); § 843.05, Fla. Stat. (resisting timber agent); § 843.06, Fla. Stat. (neglect or refusal to aid peace officers); § 843.08, Fla. Stat. (falsely personating officer, etc.); § 843.081, Fla. Stat. (prohibited use of certain lights); § 843.085, Fla. Stat. (unlawful use of police badges or other indica of authority); § 843.0855, Fla. Stat. (criminal actions under color of law or through use of simulated legal process); § 843.09, Fla. Stat. (escape through voluntary action of officer); § 843.10, Fla. Stat. (escape through negligence of officer); § 843.11, Fla. Stat. (conveying tools into prison to aid escape); § 843.12, Fla. Stat. (aiding escape); § 843.13, Fla. Stat. (aiding escape of juveniles); § 843.14, Fla. Stat. (compounding felony); § 843.15, Fla. Stat. (failure of defendant on bail to appear); § 843.16, Fla. Stat. (unlawful installation of radio equipment); § 843.165, Fla. Stat. (unlawful transmission); § 843.167, Fla. Stat. (unlawful use of police communications); § 843.17, Fla. Stat. (publishing name and address of police officer); § 843.18, Fla. Stat. (boats, fleeing or attempting to elude a law enforcement officer); § 843.19, Fla. Stat. (injuring or killing police dog). Summary Judgement was therefore properly entered against Plaintiffs on their RICO

---

**11.** Extortion makes it unlawful to threaten to accuse another of any crime or offense, or threaten any injury to the person, property or reputation of another, or threaten to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another. § 836.05, Fla. Stat.

violation based upon a claim of obstruction of justice.

■ Lastly, the Court notes that Plaintiffs cannot maintain their RICO claim based upon an allegation of conspiracy because Plaintiffs have not alleged any underlying wrongful act. *See generally Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000) (civil conspiracy claim requires an underlying wrongful act).

As discussed above, Plaintiffs' allegations in their RICO claim in the Second Amended Complaint do not show any wrongful or criminal act on the part of Defendants or OPIC. It is therefore patently obvious that Plaintiffs cannot state a RICO claim based upon the facts alleged in the Second Amended Complaint. *Betts v. Advance America,* 213 F.R.D. 466, 483 (M.D.Fla.2003) (holding that because the defendants' conduct was not unlawful it could not serve as predicate acts under RICO). As with the other tort claims, therefore, additional discovery or record evidence on Plaintiffs' RICO claim would be futile.

Finally, the Court denies Plaintiffs' request for additional discovery as to Defendants' counterclaim for confirmation of the Final Arbitration Award. Despite the fact that the Final Arbitration Award was entered over two and a half years ago, Plaintiffs have failed to document any real indicia of unfairness or bias in the arbitration proceedings. The Court refuses to permit discovery and reopen the record to allow Plaintiffs to launch a fishing expedition for evidence of unfairness and bias.

In summary, the Court finds that allowing an exchange of discovery and a supplementation of the record would merely operate to prolong this litigation at the expense of both parties. Plaintiffs' request to supplement the record is therefore denied.

### IV. Motion to Amend

■ Plaintiffs ask this Court to grant Plaintiffs leave to amend their Second Amended Complaint to assert federal question jurisdiction. Plaintiffs contend that the domestication of the Dominican Republic sentence involves a substantial question of federal law. However, as discussed above, state law, not federal law, applies to the issue of whether to recognize a foreign country judgment. *See* discussion at II. A.

■ Moreover, it cannot be argued that subject matter jurisdiction in this case is based upon a federal question. The recognition of judgments of foreign nations is not a right or privilege conferred by the United States Constitution, any federal statute or any international treaty. *Aetna Life Ins. Co. v. Tremblay,* 223 U.S. 185, 190, 32 S.Ct. 309, 56 L.Ed. 398 (1912) (dismissing for want of jurisdiction a case seeking review of a state court's failure to recognize a foreign judgment, stating that "[n]o such right, privilege, or immunity, however, is conferred by the Constitution or by any statute of the United States in respect to the judgments of foreign states or nations, and we are referred to no treaty relative to such a right."). The Full Faith and Credit Clause of Section 1 of Article IV of the United States Constitution does not apply to foreign judgments. U.S. Const. Art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.").

Moreover, the principle of comity recognized by the Supreme Court in *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895) does not supply its own jurisdictional predicate. If *Hilton's* comity analysis carried its own jurisdictional predicate, there would be no need for courts, such as *Turner Entertainment Co. v. Degeto Film,* 25 F.3d 1512, 1520 n. 12 (11th Cir.1994);

**1174**

Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 359 (10th Cir.1996); and *Success Motivation Institute of Japan Ltd. v. Success Motivation Institute, Inc.,* to resort to state law based upon diversity jurisdiction. Notably, the United States Supreme Court's decision in *Aetna Life Ins. Co. v. Tremblay,* 223 U.S. 185, 190, 32 S.Ct. 309, 56 L.Ed. 398 (1912), finding that the proper recognition to be given to a foreign judgment did not involve a federal question, was rendered after *Hilton.*

Accordingly, the Court denies Plaintiffs' request to amend the Second Amended Complaint since any such amendment would be futile.

## V. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs Nicor International Corporation ("Nicor") and Consultores de la Cuenca Del Caribe's a/k/a/ Carib Consult ("Carib") Combined Motion for Rehearing, Reconsideration, Alteration, and/or Amendment of Order Pursuant to Rule 59 and 60; Motion to Amend Court Findings Pursuant to Rule 52(b); Motion to Supplement Record; and Motion to Amend Complaint Pursuant to Rule 15, filed December 9, 2003 (DE 80) is **DENIED.**

2. Additionally, Defendants' Motion to Dismiss Counts II and III of the Counterclaim (DE 88) is **GRANTED.** Counts II and III of the Counterclaim are dismissed.

3. Defendants' Motion for Enlargement of Page Limitation (DE 89) and Motion for Expedited Consideration (DE 94) are **DENIED** as moot.